IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES LENING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-0517 |
| ) | |
| WAYNE CARPENTER, Warden, ) | Judge Campbell |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION**

Petitioner James Lening, a prisoner in state custody at Riverbend Maximum Security Institution, has filed a *pro se* petition under 28 U.S.C. § 2254 for a writ of habeas corpus (ECF No. 1). Pursuant to the petitioner's request, to which the respondent did not object, the petition was held in abeyance while the petitioner pursued additional state-court remedies. The matter has now been re-opened and, with the Court's permission, the petitioner supplemented his petition with additional claims that he asserts have now been fully exhausted. The respondent has filed an answer in opposition to the petition, as amended, along with a complete copy of the underlying state-court record.

The petition is timely and is ripe for review. For the reasons set forth herein, the petition will be denied and this action dismissed with prejudice.

**I.   PROCEDURAL BACKGROUND**

On February 26, 2008, the petitioner was found guilty by a Davidson County Jury of one count aggravated criminal trespass; one count of aggravated burglary, two counts of aggravated assault, and one count of vandalism over $1,000. Davidson County Criminal Court Judge Cheryl Blackburn sentenced the petitioner on April 9, 2008 to eleven months and twenty-nine days for aggravated criminal trespass; fifteen years for aggravated burglary and fifteen years for each count of aggravated assault (all as a Range III, persistent offender); and to twelve years (as a career offender) on the count of vandalism over $1,000. The trial court ordered that the misdemeanor sentence of eleven month and twenty-nine day be served concurrently with his other sentences, that his fifteen-year sentences for aggravated assault be served concurrently with one another but consecutively to his other felony sentences, and that the fifteen-year

sentence for aggravated burglary and twelve-year sentence for vandalism over $1,000 be served consecutively to each other and consecutively to his concurrent sentences for aggravated assault, for a total effective sentence of forty-two years. (ECF No. 32-1, at 53–59 (Judgments).) The conviction and sentence were affirmed on direct appeal. *State v. Lening* ("*Lening I*"), No. M2008-01218-CCA-R3-CD, 2009 WL 1605579 (Tenn. Ct. Crim. App. June 9, 2009), *perm. appeal denied* (Tenn. Oct. 19, 2009).

Thereafter, the petitioner filed a *pro se* petition in the state court for post-conviction relief. (ECF No.32-11, at 29–42.) Counsel was appointed and an amended petition was filed. (ECF No. 32-11, at 49–58.) The trial court conducted a hearing on June 22, 2011 (*see* ECF No. 32-12) and denied the petition. (ECF No. 32-11, at 66–68.) That decision was affirmed on appeal as well. *Lening v. State* ("*Lening II*"), No. M2012-01630-CCA-R3-PC, 2013 WL 1304140 (Tenn. Ct. Crim. App. April 1, 2013). Lening did not seek review from the Tennessee Supreme Court, and the mandate issued on June 10, 2013.

Based on documents submitted by the respondent, it appears that Lening then filed a petition to reopen post-conviction proceedings in the state court, which the trial court denied on December 17, 2013. (*See* Notice of Appeal, ECF No. 32-17, at 4–5.) The petitioner attempted to appeal that disposition, but his appeal was dismissed for lack of jurisdiction as a result of Lening's failure to comply with the statutory requirements for seeking an appeal of the denial of a motion to reopen post-conviction proceedings. *See Lening v. State* ("*Lening III*"), M2014-00128-CCA-R3-PC (Tenn. Ct. Crim. App. Feb. 18, 2014) (order dismissing appeal for failure to comply with Tenn. Code Ann. § 40-30-117(c) and Tenn. Sup. Ct. R. 28, § 10(B)) (in this Court's record at ECF No. 32-17, at 6–7).

While pursuing his motion to reopen post-conviction proceedings, Lening also filed, on May 28, 2013, a state Petition for Writ of Habeas Corpus under Tenn. Code Ann. § 29-21-101 in the Circuit Court of Lauderdale County. (ECF No. 32-18, at 5–11.) The circuit court denied the petition, and the Tennessee Court of Criminal Appeals affirmed on February 5, 2014. *Lening v. State* ("*Lening IV*"), No. W2013-01648-CCA-R3-HC, 2014 WL 476230 (Tenn. Ct. Crim. App. Feb. 5, 2014).

Meanwhile, Lening filed his petition for federal habeas relief under 28 U.S.C. § 2254 in this Court on May 24, 2013. The Court thereafter granted his unopposed motion to hold these proceedings in abeyance pending exhaustion of his state-court remedies. On March 12, 2014, the petitioner filed motions to reopen this case and to amend his petition to include newly exhausted claims. The Court granted both motions and

directed the respondent to file his answer to the petition, as amended. The respondent has now filed a complete copy of the underlying state proceedings and his answer to the petition, in which he denies that the petitioner is entitled to relief on any of the grounds asserted.

## II. STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:[1]

> The facts underlying the convictions in this case were contested at trial. The State first presented testimony from Jason Frye that sometime around 11:30 a.m. on February 24, 2007, he and his wife, Sandy Frye, were sleeping in their residence at 4211 Wood Street in Nashville. They woke up to a loud crashing noise. Mr. Frye at first believed that his cousin, who habitually knocked very loudly, had come for an unannounced visit; accordingly, he got up and walked to the door. A second impact from outside the door convinced him that someone was trying to break in. The door started to open following a third impact; Mr. Frye attempted to force it shut but was overpowered. He heard a man say, "Motherfuckers, I want your money." He therefore allowed the door to open, at which point a man stumbled into the residence. Mr. Frye identified this man as the Defendant. The Defendant wore a hooded jacket and had part of his head shaved, with short hair covering the rest of his head. Mr. Frye hit the Defendant in the face with his fist. The Defendant stumbled backwards down the outside steps, looked directly at Mr. Frye and ran away. Mr. Frye had never seen the Defendant before. Frye then tried to close his door but found that it had come off its frame. He therefore chained it shut. After looking out his windows to make sure the Defendant was gone, he asked Sandy Frye to call the police. Mr. Frye then walked outside to see if the Defendant had damaged anything there. Mrs. Frye corroborated this testimony.
>
> Jenny Fontenot, who lived about one-half mile from the Frye residence at 1400 Station Four Lane, testified that she drove her car into her garage about 11:30 a.m. Her two-year old son, Marcus Fontenot, was in the backseat of the car. After she pulled in but before she turned her car off, she saw, in her side mirror, a man holding a knife coming toward her. Ms. Fontenot identified this man as the Defendant and testified that he had blood on his face and in his mouth. He wore a t shirt but not a jacket, and she also noticed his partially shaved head.
>
> Ms. Fontenot screamed; the Defendant told her that if she did not come out of her car he would kill her and her son. Ms. Fontenot scrambled into the front passenger seat in an effort to reach her son and leave the car, but the Defendant followed her around the car. The Defendant then tried to puncture the car's tire with his knife, but he was not able to do so. He also tried to break her window with the knife but was unsuccessful. The Defendant then lifted a nearby air compressor and pounded it into the car's windshield. Ms. Fontenot continued to scream and honk her car horn. As the Defendant hit her windshield with the air compressor for the third or fourth time, Ms. Fontenot worried that the glass would break. She therefore returned to her driver's seat and, after determining that the car was still running, backed out of her garage. The Defendant ran away; seeing which way he went, Ms. Fontenot followed while calling 911 on her cell phone. She asked some nearby construction workers to help her

---

[1] The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

-3-

follow the Defendant. One of the workers apparently followed the Defendant while Ms. Fontenot stayed in the area near her house. Her son Marcus, who had been silent during the attack, began to cry. Ms. Fontenot testified that the damage to her car totaled more than $1,000.

Officer Philip Meador of the Metro Nashville Police Department responded to Ms. Fontenot's 911 call and met Ms. Fontenot and some of the other construction workers. Officer Meador drove in the direction Ms. Fontenot indicated, and Ms. Fontenot followed him. When they reached nearby Stokley Lane, Ms. Fontenot stopped and, although she was still quite distressed, eventually communicated to Officer Meador that she saw her assailant standing in a nearby yard. Officer Meador then approached the Defendant and took him into custody. The Defendant did not resist. While Officer Meador was transporting the Defendant, he received information about the Fryes' earlier call, which contained a description matching the Defendant. Officer Meador drove to the Fryes' residence, where both Jason and Sandy Frye positively identified the Defendant as their assailant as he sat in the back of Officer Meador's car.

Officer William Kirby of the Metro Nashville Police Department's identification section also testified about his investigation of the events at Fontenot's residence. He found an overturned air compressor in Ms. Fontenot's garage and a knife handle with a broken-off blade in her driveway. He did not recover the missing blade. He was not able to recover fingerprints from the knife, most likely because the knife had been rained on before he arrived and the surface of the air compressor was such that it did not retain fingerprints. He also investigated the Frye residence and confirmed that the casing around their door had been damaged.

The Defendant testified that on the evening of February 23, 2007, he had been at Cragnacker's, a sports bar in Hermitage. There, he met a girl named Michelle who was friends with Jason and Sandy Frye. Two of the Fryes' other friends, Jennifer and Mike, were also present. The group drank at Cragnacker's for some time and later ended up back at the Fryes' residence "partying, drinking, doing drugs and drinking and things like that."

At some point, the Defendant passed out. He woke up in the morning to find Jason and Mike shaving his head. The Defendant, still "messed up" on alcohol and pills, started fighting them. The fight moved outside, where Jason and Mike were joined by another of their friends, Chris, who had arrived at the Fryes' residence sometime the night before. Jason, Mike, and Chris kicked the Defendant repeatedly before fleeing into the house. The Defendant then beat on the door a number of times, demanding that the Fryes give him the jacket, cell phone, and drugs he had left in the house. Jason opened the door and hit the Defendant in the face with a stick. Jason and the others, wielding sticks and bats, then chased the Defendant as he ran away down the street. Eventually he reached Ms. Fontenot's house, approached her car, and asked her to call the police. He said he did not have a knife and did not vandalize her car. He saw Ms. Fontenot on her cell phone and assumed that she was calling the police in order to help him. He therefore waited nearby and was arrested when the police arrived.

*Lening I*, 2009 WL 1605579, at *1–3.

### III.    ISSUES PRESENTED FOR REVIEW

In his § 2254 petition, Lening asserts the following claims for relief:

1. Counsel was ineffective for

    (a) failing to interview key state witnesses prior to trial and

    (b) failing to investigate the amount of Ms. Fontenot's damages;

2. Counsel was ineffective, and violated the Rules of Professional Conduct, insofar as he failed to effectively communicate with the petitioner regarding trial strategy or to review discovery with him.

3. Counsel was ineffective insofar as he failed to file a pre-trial motion *in limine*

    (a) to exclude evidence of a knife handle that was introduced at trial, or

    (b) to exclude statements made by Mrs. Fontenot while testifying.

4. (a) The petitioner's sentence was in violation of his Sixth Amendment right to have a jury decide enhancements based on anything other than the petitioner's prior criminal record;

    (b) counsel was ineffective for failing to present mitigating factors during sentencing; and

    (c) counsel was ineffective for failing to object to the "manner of sentencing." (ECF No. 1, at 11.)

5. The petitioner was tried and convicted on the basis of an indictment that amended without the petitioner's knowledge or consent, thus rendering his convictions and sentences void. (ECF No. 27, at 2.)

6. Trial counsel was ineffective for consenting to the amendment of the indictment prior to trial. (*Id.*)

## IV. ANALYSIS AND DISCUSSION

### A. Procedurally Defaulted Claims

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once his federal claims have been raised in the highest state court available,[2]

---

[2] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003)

the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). If a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted, and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000).

Of the eight separate claims or subclaims of ineffective assistance of counsel asserted in Lening's petition, as set forth above, at least three were not fully exhausted in the petitioner's state post-conviction proceedings, including Claims 1(b) (failure to investigate the amount of Ms. Fontenot's damages), 4(c) (failure to object to the manner of sentencing), and 6 (consenting to the amendment of the indictment).

More specifically, the petitioner raised Claim 1(b) in his original post-conviction petition (*see* ECF No. 32-11, at 36, Post-Conviction Pet'n at 8) and amended petition (*id.* at 54, Am. Post-Conviction Pet'n at 6), but he did not address this issue during the post-conviction hearing (*see* ECF No. 32-12, at 10–11 (referring only to counsel's failure to hire a private investigator to do background checks of the state's witnesses and to obtain the petitioner's medical records); *id.* at 54 (referring to counsel's purported failure to hire an investigator to try to find defense witnesses)). He also did not raise the issue in his appeal to the Tennessee Court of Criminal Appeals. (ECF No. 32-14, at 13, Post-Conviction App. Br. at 12 (arguing only that the failure to interview witnesses prior to trial or to hire a private investigator caused the petitioner to be "uninformed about the nature

---

(quoting Tenn. S. Ct. R. 39).

of the testimony of the witnesses, and whether the witnesses for the State were going to be present for trial"). In other words, the issue was not raised in the highest state court available and was therefore not fully exhausted.

Claim 4(c), that counsel was ineffective for "failing to object to the manner sentencing issued" (ECF No. 1, at 11), was not explicitly pursued under this theory in the state proceedings. In his original post-conviction petition, Lening argued that his trial counsel was ineffective for failing to argue that the Tennessee Sentencing Reform Act of 1989 violated the Sixth Amendment insofar as it allowed the court to sentence him by applying enhancing factors that had not been determined by a jury, and that counsel failed to object that consecutive sentences based on judge-found statutory factors violated *Apprendi v. New Jersey*, 530 U.S. 466 (2006), and *Blakely v. Washington*, 542 U.S. 296 (2004). (*See* ECF No. 32-11, at 37–38, Post-Conviction Pet'n at 9–10.) In the amended petition, counsel articulated this argument as an error by the *court*, not by counsel. (*See id.* at 56, Am. Post-Conviction Pet'n at 8 ("Finally, Petitioner submits that he was sentenced illegally by the Court.").) On appeal, the issue was again framed as a trial-court error rather than as an ineffective-assistance claim: that the court improperly sentenced the petitioner in violation of the Sixth Amendment and Supreme Court precedent insofar as the sentence was based on enhancement factors that had not been determined by a jury. The Tennessee Court of Criminal Appeals rejected this particular argument, finding that "there [were] no cognizable *Blakely* issues" in this case. *Lening II*, 2013 WL 1304140 at *3. Again, the issue as articulated in this Court was not raised in the highest state court available and therefore was not fully exhausted.

Claim 6, that counsel was ineffective for consenting to the amendment of the indictment prior to trial, was first raised in Lening's state habeas corpus petition.[3] On appeal, the state court found that this claim, even if true, did not state a cognizable claim for habeas relief, because a claim of ineffective assistance of counsel would render the petitioner's judgments "voidable and not void." *Lening IV*, 2014 WL 476230, at *2. *See id.* at *1 ("[T]he purpose of a habeas corpus petition is to contest void and not merely voidable judgments. . . .

---

[3] The petitioner might have raised this claim in his motion to reopen the state post-conviction proceedings. That motion is not in this Court's record. Regardless, Lening's attempt to appeal the post-conviction court's denial of that motion failed on procedural grounds. The Tennessee Court of Criminal Appeals dismissed the appeal for lack of jurisdiction without considering the petitioner's claims on the merits. *See Lening III*, M2014-00128-CCA-R3-PC (Tenn. Ct. Crim. App. Feb. 18, 2014) (ECF No. 32-17, at 6–7). Thus, even if the issue was raised in the state trial court, it was not effectively raised in the highest state court available.

A void judgment is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." (quotation marks and internal citation omitted)). This Court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991). The adequate-and-independent-state-ground doctrine "bar[s] federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." *Id.* at 729–30. Here, the petitioner's ineffective-assistance claim was required to have been brought in his initial post-conviction petition, and it was not properly cognizable in a state habeas proceeding. The state court's denial of review on the basis that the claim was not cognizable constitutes an adequate and independent state-law ground that bars review of the claim on the merits by this Court.

Further, the petitioner is now barred by Rule 3 of the Tennessee Rules of Appellate Procedure and the one-year statute of limitations governing post-conviction proceedings in Tennessee, Tenn. Code Ann. § 40-30-102(a), from having any of these unexhausted claims considered on the merits by the Tennessee Court of Criminal Appeals. The claims are therefore technically deemed to be exhausted but procedurally defaulted.

In order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and "actual prejudice" resulting from the alleged constitutional errors. *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, --- U.S. ----, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Alternatively, a petitioner may show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The petitioner here does not acknowledge that his claims are defaulted, much less argue any basis for overcoming the procedural default.

The petitioner is therefore not entitled to relief on the basis of any of these claims.

**B. Fully Exhausted Claims – Standard of Review**

Even when a petitioner's application for a writ of habeas corpus raises only federal constitutional claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. The standard for reviewing applications for the writ of habeas corpus is set forth in 28 U.S.C. § 2254(d). This section states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Further, this Court must presume the correctness of state court factual determinations, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . . A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [this Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405–06 (2000) (citation omitted).

With respect to the "unreasonable application" clause of § 2254(d)(1), the Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> . . . . [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its

-9-

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409–11 (emphasis original).

With these principles in mind, the court will turn to the examination of the fully exhausted claims raised in Lening's petition for habeas relief.

### *1. Ineffective Assistance of Counsel*

The plaintiff presents five claims of ineffective assistance of counsel that are fully exhausted, including Claim 1(a) (failure to interview key state witnesses prior to trial); Claim 2 (failure to communicate regarding trial strategy or to review discovery with the petitioner); Claim 3(a) (failure to file a pretrial motion or an objection during trial to introduction of the knife handle found in Ms. Fontenot's garage); Claim 3(b) (failure to move to exclude a statement made by Ms. Fontenot on the witness stand); and Claim 4(b) (failure to present mitigating factors during sentencing).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Id.* at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, 28 U.S.C. § 2254(d)(1), that it "involved an unreasonable application of" such law, *id.*, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. *Id.* § 2254(d)(2).

Thus, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*:

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a

deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

With respect to the ineffective-assistance claims asserted in this case, the state court correctly articulated the standard established by *Strickland, see Lening II*, 2013 WL 1304140, at *2, and its application of that standard, though cursory, was not unreasonable:

> On appeal, the petitioner reiterates his claim of ineffective assistance of counsel, claiming that trial counsel failed to interview witnesses [Claim 1(a)] . . . ; failed to object to statements by the victim at trial [Claim 3(b)]; failed to consult with the petitioner regarding trial strategy [Claim 2]; failed to visit the petitioner and review discovery documents with him [Claim 2]; failed to file a motion to suppress the knife handle [Claim 3(a)]; . . . and failed to submit any mitigating factors [Claim 4(b)].
>
> . . . .
>
> [T]he record supports the post-conviction court's denial of relief. . . . Counsel testified—and the court gave credit to that testimony—that he attempted to speak with the State's witnesses and was only able to interview one of them. With respect to the petitioner's claims regarding counsel's failure to file any motions to suppress, the record does not contradict counsel's testimony and the court's finding that no basis existed for filing such motions. Moreover, there would have been no basis for trial counsel to object to the victim's statement about what the petitioner said to her because such a statement is admissible under Tennessee Rule of Evidence 803. Trial counsel testified that he did discuss trial strategy with the petitioner, that he visited with the petitioner at least ten times prior to trial, and that he reviewed discovery documents with him and informed him of the maximum potential sentence he could receive, as well as the possibility of his receiving consecutive sentences. The petitioner even admitted to the post-conviction court that he had received discovery materials, including his indictment. Finally, trial counsel testified that he was unaware of any mitigating factors applicable to the petitioner. The post-conviction court accredited counsel's testimony, and counsel's testimony belies any claim of deficient performance or prejudice to the petitioner. As such, the petitioner is not entitled to relief.

*Id.* at *2, *3.

The Tennessee Court of Criminal Appeals' rejection of the petitioner's various ineffective-assistance claims did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). The state court cited the applicable federal standard of review from *Strickland* and reasonably applied that standard. Thus, the petitioner is not entitled to federal relief based on these claims.

### 2. Other Claims

The petitioner raises two additional claims: that his sentence was in violation of his Sixth Amendment right to have a jury decide enhancements based on anything other than the petitioner's prior criminal record

(Claim 4(a)), and that his convictions and sentences are void because the indictment was amended without his knowledge or consent (Claim 5).

*Claim 4(a)*

In his habeas petition, Lening asserts that he was sentenced illegally and in deprivation of "his Sixth Amendment right to have a jury determine whether enhancement factors other than a defendant's criminal history applied to increase the overall sentence." (ECF No. 1, at 11.) In support of this claim, he asserts that Tennessee's sentencing guidelines were amended in 2005 "and therefore Petitioner's sentence could not be enhanced by anything other than his prior record, under the law." (*Id.*) Based on the context of the petitioner's claim, he appears to be contesting primarily the fact that his sentences were ordered to be served consecutively rather than concurrently.

With regard to this claim, the Court notes, first, that to the extent the petitioner is asserting that his sentence violated *state* law, he fails to state a claim cognizable upon federal habeas review. *See* 28 U.S.C. § 2254(a) (federal habeas relief is available only if an inmate is being held "in violation of the Constitution or laws or treaties of the United States"). Regarding the federal component of his claim, the post-conviction court addressed this claim as follows:

> [Because the petitioner was sentenced under the amended sentencing act,] there are no cognizable *Blakely* issues. However, *en arguendo*, even if *Blakely* applied here, there was no violation. When the Court sentenced Petitioner, the Court found that two of the enhancement factors applied in Petitioner's case: Factor 2: "The defendant is an offender whose record of criminal activity is extensive" and Factor 4: "The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(2), (4). In light of Petitioner's criminal history, the Court found Petitioner to be classified as a Persistent Offender for his aggravated assault convictions (Counts 5 and 6) and a Career Offender for his vandalism count (Count 7). Petitioner's criminal history alone justified sentencing Petitioner to the middle of the top of the range (10–15 years) on his aggravated assault conviction and the Court sentenced [P]etitioner to 12 years on his vandalism conviction, which was the sentence provided by law for a Career Offender.
>
> In regard to consecutive sentencing, Petitioner challenged the manner of sentencing on his direct appeal. The Court of Criminal Appeals analyzed Petitioner's consecutive sentences *de novo* pursuant to [Tenn. Code Ann.] § 40-30-115(b)(5) and deemed the manner of sentences proper and imposed in accordance to the *Wilkerson*[4] factors.
>
> As to any potential *Blakely* violations, as the Court noted above *Blakely* is inapplicable here; however, assuming *en arguendo Blakely* had applied to the matter, Tennessee law has explicitly held that *Blakely* does not preclude the imposition of consecutive sentences based upon judicially determined facts.

---

[4] *State v. Wilkerson*, 905 S.W.2d 933 (Tenn. 1995).

> Accordingly, the Court finds that Petitioner has failed to demonstrate that the *Blakely* decision affects Petitioner's consecutive sentencing or that the trial court violated Petitioner's constitutional rights with the imposition of the sentence.

(ECF No. 32-11, at 86–88 (some footnotes and internal citations omitted).) The Court of Criminal Appeals affirmed, simply agreeing with the trial court that there were "no cognizable *Blakely* issues in this case." *Lening II*, 2013 WL 1304140, at *3.

Although the court did not cite to any federal law in support of its conclusion, the Supreme Court has addressed the issue and expressly held that the Sixth Amendment, as construed in *Apprendi* and *Blakely*, does not prohibit states from assigning to judges, rather than juries, the finding of facts necessary to impose consecutive rather than concurrent sentences for multiple offenses. *Oregon v. Ice*, 555 U.S. ----, 129 S. Ct. 711, 714–15 (2011). Thus, the state court's resolution of this issue in Lening's case did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d). The petitioner is not entitled to relief on the basis of this claim.

*Claim 5*

In the amendment to his habeas petition, Lening claims that he was tried and convicted on an indictment that was illegally amended because he personally did not consent to the amendment. In support of this claim, he submits to the Court an excerpt of the transcript of a hearing on the defendant's motion to sever offenses before the Davidson County Criminal Court that took place on February 6, 2008. At the close of that hearing (in which Judge Blackburn denied the motion to sever), the state prosecutor noted that the defendant was charged in the indictment on counts 2 and 3 with attempted aggravated robbery. He stated: "In speaking with the victims I think the State would need to amend that charge downward to be just attempted-simple robbery as to Counts 2 and 3." (ECF No. 25-1, at 7–8.) He noted this change would alter the "theory on Count 1," which charged aggravated robbery, to just "simple robbery" (*id.* at 8), though he did not seek to amend that charge. He concluded: "If the defendant agrees, I'll just ask to do an amended indictment instead of taking it back to the grand jury." (*Id.*) Defense counsel did not object, and the assistant district attorney indicated his intent to "have the new indictment redone for the trial on the 25th." (*Id.*)

The indictment was, in fact, amended to charge attempted robbery in Counts 2 and 3, in violation of Tenn. Code Ann. § 39-13-401, instead of attempted aggravated robbery in violation of Tenn. Code Ann. § 39-13-402. (*Compare* Indictment, ECF No. 32-1, at 6–7, *with* Am. Indictment, ECF No. 32-1, at 31–32.) Robbery,

-13-

under § 39-13-401(a), is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Aggravated robbery is defined as "robbery as defined in § 39-13-401 . . . [a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or . . . [w]here the victim suffers serious bodily injury." Tenn. Code Ann. § 39-13-402(a). In other words, robbery is a lesser included offense of aggravated robbery and, as such, is a narrower charge, not a broader charge.

Under federal law, the narrowing of an indictment, that is, a variance that adds nothing new to the indictment and does not constitute a broadening thereof, does not violate the Fifth Amendment. *United States v. Miller*, 471 U.S. 130,145 (1985). *See id.* ("The variance complained of added nothing new to the grand jury's indictment and constituted no broadening. . . . We therefore disagree with the Court of Appeals on the issue of whether Miller has shown any compromise of his right to be tried only on offenses for which a grand jury has returned an indictment. "). Here, in order to find attempted aggravated robbery, the grand jury necessarily first had to find attempted robbery. Consequently, the amendment to which Lening objects did not violate his federal constitutional right to indictment by a grand jury. Moreover, even if the amendment had unconstitutionally broadened the charged offenses, Lening was acquitted on Counts 2 and 3.

Thus, regardless of whether this claim was fully exhausted or procedurally defaulted as the respondent claims, it is clear that the petitioner's constitutional rights were not violated. He is not entitled to relief on the basis of this claim.

**V.     CONCLUSION**

For the reasons set forth herein, James Lening's petition under § 2254 will be denied and this matter dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11(a), Rules Gov'g § 2254 Proceedings. The petitioner may not take an appeal unless a district or circuit judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the COA must "indicate which specific issue or issues satisfy the [required] showing . . . ." 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the petitioner demonstrates that "'reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a

different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337. Courts should not issue a COA as a matter of course. *Id.*

In this matter, the record establishes that his counsel's performance was not deficient and that the petitioner is not entitled to relief on any of the other grounds for relief asserted. Because the issues raised in Lening's petition do not merit further attention, the Court will deny a COA. The petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals.

An appropriate order is filed herewith.

_____
Todd Campbell
United States District Judge